LAURA A. STOLL (SBN 255023)
*LStoll@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street, Suite 4100
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

MATT KANNY (SBN 167118)
*MKanny@goodwinlaw.com*
**GOODWIN PROCTER LLP**
520 Broadway, Suite 500
Santa Monica, CA 90401
Tel.: +1 424 252 6400
Fax: +1 424 252 6401

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

XAVIER MALDONADO, an individual; JUSTIN PURSER, an individual; and CHRISTOPHER BUTLER, an individual, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BPS DIRECT, LLC, a limited liability company; CABELA's LLC, a limited liability company; GREAT OUTDOORS GROUP, LLC, a limited liability company, BASS PRO OUTDOOR WORLD, LLC, a limited liability company; CABELA'S WHOLESALE, LLC, a limited liability company; and DOES 1 through 100, inclusive,

Defendants.

Case No. 2:24-cv-00098-SVW-MAR

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: April 1, 2024
Time: 1:30 PM
Courtroom: 10A
Judge: Hon. Stephen V. Wilson

Filed/Lodged Concurrently with:
1. Declaration of Laura A. Stoll
2. Request for Judicial Notice
3. [Proposed] Order

Complaint filed: Nov. 21, 2023

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on April 1, 2024 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10A, of the United States District Court for the Central District of California, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California, before the Honorable Stephen V. Wilson, Defendants BPS Direct, LLC, Cabela's LLC, Great Outdoors Group, LLC, Bass Pro Outdoor World, LLC, and Cabela's Wholesale, LLC ("Defendants") will, and hereby do, move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim or, in the alternative, to transfer the case to the United States District Court for the Western District of Missouri, under 28 U.S.C. § 1404(a), pursuant to the parties' contractual agreement to litigate there.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Laura A. Stoll, the Request for Judicial Notice, all papers from this case on file with the Court, all other matters of which the Court may take judicial notice, any further evidence or argument offered to the Court at the hearing on this Motion, and any other evidence and argument the Court may consider.

This motion is made following the conferences of counsel pursuant to L.R. 7-3 which took place on January 22, 2024 and January 30, 2024.

Dated: February 9, 2024

Respectfully submitted,

**GOODWIN PROCTER LLP**

By: */s/ Laura A. Stoll*

LAURA A. STOLL
*LStoll@goodwinlaw.com*
MATT KANNY
*MKanny@goodwinlaw.com*

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**


MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
INTRODUCTION ........ 1
BACKGROUND ........ 2
I. PLAINTIFFS' ALLEGATIONS ........ 2
II. THE TOU ........ 3
LEGAL STANDARDS ........ 5
I. MOTION TO DISMISS STANDARD ........ 5
II. MOTION TO TRANSFER STANDARD ........ 5
ARGUMENT ........ 6
I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6) ........ 6
  A. Plaintiffs Lack Statutory Standing To Assert Both Claims ........ 6
    1. Plaintiffs Lack Statutory Standing Under the Yelp Law Because They Are Not Within The Yelp Law's "Zone of Interest." ........ 6
    2. Plaintiffs Lack Statutory Standing Under the UCL ........ 9
  B. Plaintiffs' Claims Fail On The Merits ........ 11
    1. Plaintiffs' Yelp Law Claim Fails On The Merits Because Their Allegations Are Outside The Scope of The Statute ........ 11
    2. Plaintiffs' UCL Claim Fails On The Merits Because There Are No Plausible Allegations of "Unlawfulness" or "Unfairness." ........ 13
  C. Leave To Amend Would Be Futile ........ 14
II. IF THE COMPLAINT IS NOT DISMISSED, THE CASE SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF MISSOURI ........ 15
CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akins v. United States*,
2021 WL 5203294 (C.D. Cal. Nov. 9, 2021) .......... 9

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) .......... 5, 15, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Bragg Live Food Prods., LLC. v. Nat'l Fruit Prod. Co., Inc.*,
2022 WL 3574423 (C.D. Cal. Jul. 22, 2022) .......... 10

*Carter v. Bank of Am., N.A.*,
2012 WL 12887542 (C.D. Cal. Dec. 12, 2012) .......... 14

*Cavka v. SoulCycle Inc.*,
2017 WL 2906034 (C.D. Cal. Jan. 30, 2017) .......... 10

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) .......... 14

*City of Fernley v. Conant*,
2023 WL 2549792 (9th Cir. Mar. 17, 2023) .......... 6, 9

*Cornejo v. JPMorgan Chase Bank*,
2011 WL 6149246 (C.D. Cal. Dec. 12, 2011) .......... 14

*Croshal v. Aurora Bank, F.S.B.*,
2014 WL 2796529 (N.D. Cal. June 19, 2014) .......... 10, 13

*DeBons v. Globus Med., Inc.*,
2014 WL 12586433 (C.D. Cal. Jan. 31, 2014) .......... 11

*Derosa v. Thor Motor Coach, Inc.*,
2020 WL 6647734 (C.D. Cal. Sept. 30, 2020) .......... 15

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) .......... 13

*Domen v. Vimeo, Inc.*,
2019 WL 4998782 (C.D. Cal. Sept. 4, 2019) .......... 6, 16, 17

*Frisby v. Thor Motor Coach, Inc.*,
2023 WL 1420434 (C.D. Cal. Jan. 24, 2023) .......... 17

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) .......... 9, 10

*Heinz v. Amazon.com, Inc.*,
2023 WL 4466904 (E.D. Cal. Jul. 11, 2023) .......... 16

*Hodsdon v. Mars, Inc.*
162 F. Supp. 3d 1016 (N.D. Cal. 2016) .......... 14

*Indep. Fin. Grp., LLC v. Quest Trust Co.*,
2021 WL 2550397 (N.D. Cal. Jun. 22, 2021) .......... 17

*Johnson v. Ocwen Loan Servicing, LLC*,
2017 WL 10581088 (C.D. Cal. Dec. 11, 2017) .......... 13

*Kabbash v. Jewelry Channel, Inc. USA*,
2016 WL 9132930 (C.D. Cal. Feb. 22, 2016) .......... 16

*LaCross v. Knight Transp., Inc.*,
95 F. Supp. 3d 1199 (C.D. Cal. 2015) .......... 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 6, 9

*McFarland v. JP Morgan Chase Bank*,
2014 WL 4119399 (C.D. Cal. Aug. 21, 2014) .......... 10

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) .......... 15

*Patton v. Experian Data Corp.*,
2018 WL 6184773 (C.D. Cal. Sept. 12, 2018) .......... 5, 8

*PennyMac Loan Servs., LLC v. Black Knight, Inc.*,
2020 WL 5985492 (C.D. Cal. Feb. 13, 2020) .......... 16

*Peter Marco, LLC v. Banc of Am. Merchant Servs., LLC*,
2022 WL 3098703 (C.D. Cal. May 19, 2022) .......... 5, 15, 16

*Plastino v. Wells Fargo Bank*,
873 F. Supp. 2d 1179 (N.D. Cal. 2012) .......... 11

*Quigley v. Yelp, Inc.*,
2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) .......... 8, 11, 12, 13

*Shulman v. Kaplan*,
2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) .......... 9

*Sohm v. Scholastic, Inc.*,
2016 WL 11893034 (C.D. Cal. Sept. 6, 2016) .......... 15

*Traylor v. Wyndham Resort Dev. Corp.*,
2017 WL 5172240 (C.D. Cal. May 2, 2017) .......... 9, 10

*Veiga v. Wells Fargo Bank, N.A.*,
2015 WL 12747659 (C.D. Cal. Mar. 6, 2015) .......... 9

*Woods v. U.S. Bank N.A.*,
831 F.3d 1159 (9th Cir. 2016) .......... 5

*Wright v. Ocwen Loan Servicing, LLC*,
2011 WL 13223956 (C.D. Cal. July 12, 2011) .......... 14

*Zeppeiro v. Green Tree Servicing, LLC*,
2015 WL 12660398 (C.D. Cal. Apr. 15, 2015) .......... 13

**Statutes**

Cal. Bus. & Prof. Code § 17204 .......... 9

Cal. Bus. & Prof. Code § 17200 .......... 1

Cal. Civ. Code § 1670.8 .......... 1, 6, 7, 11, 12

**Other Authorities**

Fed. R. Civ. P. 8 .......... 10, 13

Fed. R. Civ. P. 12(b)(6) .......... 5, 6, 8, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs Xavier Maldonado, Justin Purser, and Christopher Butler ("Plaintiffs") attempt to make a class action case out of their alleged visits to Defendants BPS Direct, LLC, Cabela's LLC, Great Outdoors Group, LLC, Bass Pro Outdoor World, LLC and Cabela's Wholesale, LLC ("Defendants") websites (the "Websites"). Plaintiffs allege in their Complaint, on behalf of themselves and a class of California residents, that the Terms of Use ("TOU") on Defendants' Websites contain a non-disparagement clause that impermissibly prohibited them from posting negative reviews about the Defendants. However, contrary to Plaintiffs' characterization, the TOU do not contain a non-disparagement clause or prohibit Website users from posting negative reviews about the Defendants. Instead, the TOU properly bar language that is illegal and otherwise inappropriate from Defendants' Websites and reserve Defendants' right to remove such language. Plaintiffs cherry-pick certain language from the TOU, while omitting large swaths of other relevant language with ellipses, in a failed attempt to support their theories that the TOU violate California Civil Code § 1670.8 (the "Yelp Law") and the "unlawful" and "unfair" prongs of California Business and Professions Code § 17200 (the "UCL"). The Court should not countenance Plaintiffs' attempt to manipulate the TOU to make them something they are not. Both of their claims should be dismissed.

Plaintiffs' claims fail at the outset because Plaintiffs do not have statutory standing to assert either claim. *First*, Plaintiffs lack statutory standing to sue under the Yelp Law because their allegations show that they do not fall within the "zone of interests" that the Yelp Law was enacted to protect. *Second*, Plaintiffs lack statutory standing to sue under the UCL because they do not allege any lost money or property at all—let alone lost money or property as a result of any conduct by Defendants. The Complaint should be dismissed on this basis alone.

Even if Plaintiffs had statutory standing, Plaintiffs' claims under the Yelp Law

and the UCL both fail on the merits.

Plaintiffs fail to state a Yelp Law claim because their allegations do not fall within the scope of the statute. The TOU do *not* contain a non-disparagement clause prohibiting Plaintiffs from posting negative reviews about Defendants. Rather, the TOU bar content on the Websites that is illegal, obscene, or otherwise inappropriate. And consistent with the Yelp Law's explicit exception, the TOU allow Defendants to lawfully remove such content from their own Websites.

Plaintiffs' UCL claim fails to state a claim (i) under the "unlawful" prong because it is premised on the defective Yelp Law claim and (ii) under the "unfair" prong because there is no plausible allegation that Defendants did anything immoral, unethical, oppressive, unscrupulous or substantially injurious.

The Court thus should dismiss Plaintiffs' Complaint in its entirety, with prejudice.

If the Court does not dismiss Plaintiffs' Complaint, it should transfer this case to the Western District of Missouri—the venue where the parties agreed any disputes would be litigated.

## BACKGROUND

### I. PLAINTIFFS' ALLEGATIONS[1]

Plaintiffs allege that visitors to Defendants' Websites are bound by the TOU, which govern Website users' "Conduct on the Site." Compl. ¶ 5. The TOU bar users from publishing content on Defendants' own Websites that is illegal and otherwise improper and allow Defendants to lawfully remove that content. Yet, Plaintiffs claim that the TOU "stifle California consumers' right to free speech" by purportedly stating that Website users "shall not distribute, submit or publish any content . . . that may be insulting . . . to any individual, partnership, or corporation" and that

[1] For the purposes of this Motion only, Defendants assume that the factual allegations in the Complaint are true, but reserve the right to challenge the accuracy of Plaintiffs' factual allegations at a later time in the event that the Complaint is not dismissed.

Defendants "reserve[] the right to immediately terminate your account without further notice in the event that, in its judgment, you violate the [TOU]." *Id.* ¶¶ 6-7.

Plaintiffs torture the language of the TOU to argue that it "seeks to have users waive their right as consumers to make negative statements regarding [Defendants] or [their] employees, agents, goods or services, and further threatens to penalize consumers for making such statements." *Id.* ¶¶ 6, 8. Plaintiffs contend that the language in the TOU violated the Yelp Law and, consequently, the UCL. *Id.* ¶ 23.

Tellingly, Plaintiffs do not allege that they made any purchases on the Websites, that they posted any negative reviews about Defendants or refrained from posting negative reviews about Defendants based on the TOU, that their accounts with Defendants were terminated or that they had any accounts with Defendants in the first place, or that they even read the TOU.

Based on their allegations, Plaintiffs seek to represent: (a) with respect to the Yelp Law claim, "all persons residing in California, who visited, used, or completed sales transactions on the Websites;" and (b) with respect to the UCL claim, "all persons residing in California who completed sales transactions on the Websites." *Id.* ¶ 25.

## II. <u>THE TOU</u>

When read in its entirety the TOU prohibit users of Defendants' Websites from posting illegal and improper content on the Websites, and reserve Defendants' right to lawfully remove any such content, stating:

> **4. Conduct on the Site**
>
> By accessing the Site, you agree to the following rules of conduct. You or third parties acting on your behalf are not allowed to frame these Sites or use frames or utilize framing techniques or technology to enclose any content included on these Sites without Bass Pros' express written consent. Additionally, you may not utilize any site content in any meta tags or any other "hidden text"

> techniques or technologies without Bass Pros' express written consent. *You agree and warrant that you shall not distribute, submit or publish any content*:
>
> - that is known by you to be false, inaccurate or misleading;
> - that infringes any third party's copyright, patent, trademark, trade secret or other proprietary rights or rights of publicity or privacy;
> - *that violates any law, statue, ordinance or regulation (including, but not limited to, those governing export control, consumer protection, unfair competition, anti-discrimination or false advertising); that is, or may reasonably be considered to be, illegal, obscene, sexually explicit, insulting, vulgar, defamatory, libelous, hateful, abusive, excessively violent, racially or religiously biased or offensive, unlawfully threatening or unlawfully harassing to any individual, partnership or corporation*;

Declaration of Laura A. Stoll ("Stoll Decl.") Exhibit ("Ex.") A at 5-6 (emphasis added).[2]

At the end of Section 4, which explains all of the rules governing "Conduct on the Site," the TOU state generally:

> Bass Pro reserves the right to immediately terminate your account without further notice in the event that, in its judgment, you violate these Terms of Use and Community Guidelines.

*Id*. at 7.

The TOU also includes a forum-selection clause requiring that Plaintiffs' claims be adjudicated in Missouri:

[2] There are other versions of the Terms of Use that also were in effect during the relevant time period. These other versions are identical to the version attached as Ex. A to the Stoll Decl. with respect to the relevant language discussed herein.

> You expressly agree that exclusive jurisdiction for resolving any claim of dispute with Bass Pro or relating in any way to your use of these Sites resides in the state and federal courts located in Springfield, Missouri, and you further agree and expressly consent to exercise of personal jurisdiction in the said state and federal courts.

*Id*. at 14.

## LEGAL STANDARDS

### I. MOTION TO DISMISS STANDARD

A complaint, or any cause of action alleged therein, must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint that contains mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To pass muster, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citation omitted). "Us[ing] selective quotes [from Terms of Use] to form the basis for the legal conclusion that [plaintiff] is entitled to relief" is "insufficient to state [a claim]." *Patton v. Experian Data Corp*., 2018 WL 6184773, at *5 (C.D. Cal. Sept. 12, 2018). Where a complaint lacks facts sufficient to support a "cognizable legal theory," it must be dismissed. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

### II. MOTION TO TRANSFER STANDARD

A "forum-selection clause may be enforced by a motion to transfer under § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013). A "valid forum selection clause [should be] given controlling weight in all but the most exceptional cases," and where such a clause exists, "plaintiff's choice of forum merits no weight." *Peter Marco, LLC v. Banc of Am. Merchant Servs., LLC*, 2022 WL 3098703, at *2 (C.D. Cal. May 19, 2022) (alterations in

original and citation omitted). Accordingly, "[o]nly in extraordinary circumstances unrelated to the convenience of the parties, should a motion to transfer be denied." *Domen v. Vimeo, Inc.*, 2019 WL 4998782, at *2 (C.D. Cal. Sept. 4, 2019) (Wilson, J.) (citing *Atl. Marine*, 571 U.S. at 62) (internal quotations omitted).

## ARGUMENT

## I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6).

### A. Plaintiffs Lack Statutory Standing To Assert Both Claims.

Plaintiffs' entire Complaint should be dismissed out of the gate because they do not have statutory standing to assert their Yelp Law claim or their UCL claim.

#### 1. Plaintiffs Lack Statutory Standing Under the Yelp Law Because They Are Not Within The Yelp Law's "Zone of Interest."

Plaintiffs lack statutory standing to assert their Yelp Law claim because they have not plausibly alleged any facts that could show their circumstances fall "within the zone of interests" the Yelp Law was enacted to address. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) ("[A] statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.") (citation and internal quotations omitted); *accord City of Fernley v. Conant*, 2023 WL 2549792, at *1-2 (9th Cir. Mar. 17, 2023).

The Yelp Law provides: "A contract or proposed contract for the sale or lease of consumer goods or services may not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services." Cal. Civ. Code § 1670.8(a)(1). The statute further provides: "It shall be unlawful to threaten or to seek to enforce a provision made unlawful under this section, or to otherwise penalize a consumer for making any statement protected under this section." Cal. Civ. Code § 1670.8(2). The Yelp Law was enacted to protect consumers from waiving their free speech rights based on non-disparagement clauses in consumer contracts for the sale (or lease) of goods

and services, and to prevent consumers from being penalized for posting negative reviews. *See* Assem. Floor Analysis, Analysis of Assem. Bill No. 2365 (2014-2014 Reg. Sess.) at 2. Indeed, the statute is directed at "non-disparagement clauses" in consumer contracts that "generally restrict individuals from making statements or taking any other action that negatively impacts an organization, its reputation, products, services, management or employees." *Id.*

The Yelp Law was passed in response to the specific experience of a Utah couple who posted a negative review of KlearGear.com on a third-party website, RipoffReport.com, after they did not receive the item they had purchased from KlearGear.com. *Id.* Four years after the couple posted the negative review, KlearGear.com sent them a letter demanding $3,500 for violating KlearGear.com's non-disparagement clause. *Id.* at 2-3. When the couple refused to pay, KlearGear.com reported them to a credit reporting agency, impeding their ability to obtain loans over the course of nearly two years. *Id.* at 3. The Yelp Law, thus, was enacted to "avoid [the] consumer trauma" that the Utah couple experienced by invalidating non-disparagement clauses that prevent consumers from posting negative reviews about a seller or the goods or services purchased from a seller on third-party forums. *Id.* at 3-4. Both the legislative history and text of the Yelp Law, however, make clear that the statute "shall not be construed to prohibit or limit a person or business that hosts online consumer reviews or comments from removing a statement that is otherwise lawful to remove." *Id.* at 1; Cal. Civ. Code § 1670.8(e).

The circumstances alleged in Plaintiffs' Complaint here are nothing like those that the Yelp Law aims to protect and nothing like the situation experienced by the Utah couple that inspired the enactment of the Yelp Law. Notwithstanding Plaintiffs' attempt to distort the language in the TOU, the TOU's actual language does not cause customers to waive their freedom of speech rights or penalize them for posting negative reviews. Rather, the TOU when read in context ban Website users from posting illegal and otherwise improper content on Defendants' Websites, stating:

"You agree and warrant that you shall not distribute, submit or publish any content: . . . that violates any law, statute, ordinance or regulation (including, but not limited to, those governing export control, consumer protection, unfair competition, antidiscrimination or false advertising); that is, or may reasonably be considered to be, illegal, obscene, sexually explicit, insulting, vulgar, defamatory, libelous, hateful, abusive, excessively violent, racially or religiously biased or offensive, unlawfully threatening or unlawfully harassing to any individual, partnership or corporation." Stoll Decl. Ex. A at 5-6. And the TOU state that Defendants reserve the right to terminate accounts of users who violate the TOU. *Id.*

The TOU provide precisely what the Yelp Law allows: that if a user posts inappropriate content on Defendants' Websites, Defendants have the right to lawfully remove that content from their own Websites. *See Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *2 (N.D. Cal. Jan. 22, 2018) ("[T]he Yelp Law exempts from liability entities . . . that host consumer reviews or statements, and lawfully remove content from their services.") (citing Cal. Civ. Code § 1670.8(e)) (statute "shall not be construed to prohibit or limit a person or business that hosts online consumer reviews or comments from removing a statement that is otherwise lawful to remove"). The TOU say nothing about posting negative reviews about Defendants. Instead, the TOU preserve the right of Defendants to remove from their own Websites offensive content that is (among other things), illegal, obscene, abusive, harassing, or racially or religiously biased. Plaintiffs cannot "use[] selective quotes [from the TOU] to form the basis for the legal conclusion that [they are] entitled to relief." *Patton*, 2018 WL 6184773, at *5 (dismissing claim based on purported language in Terms of Use under Rule 12(b)(6) because Complaint contained only "selective quotes" from the Terms of Use). When read in its entirety, the language in the TOU falls outside the scope and purpose of the Yelp Law's protections.[3]

[3] Although not necessary for determination of the Motion, a cursory review shows that there *are* negative reviews on the Websites.

Moreover, even if the Yelp Law applied to the language in the TOU (it does not), it does not apply to Plaintiffs' allegations here. There is no allegation that Plaintiffs (or anyone else) actually posted any negative reviews about Defendants and had their accounts terminated (or threatened to be terminated) for doing so. As noted, there is no allegation that Plaintiffs even had accounts with Defendants or read the TOU. Nor is there any suggestion that Plaintiffs had any reason to post a negative review about Defendants and were dissuaded from doing so by the language in the TOU. Indeed, the TOU could *not* have deterred Plaintiffs from posting negative reviews about Defendants because the TOU contain no such prohibition. Plaintiffs' interests here do not "fall within the zone of interests protected by the [Yelp Law]"—consumers' right to not be subjected to non-disparagement clauses in consumer contracts and to not be penalized for posting negative reviews. *Lexmark*, 572 U.S. at 129 (citations and quotations omitted). The Yelp Law simply does not "encompass[] [Plaintiffs'] claim," and they thus lack statutory standing to assert it. *Id.* at 127; *accord City of Fernley*, 2023 WL 2549792, at *2 (dismissing claim for lack of statutory standing because plaintiffs are not within the "zone of interest" protected by the statute); *Shulman v. Kaplan*, 2020 WL 7094063, at *3 (C.D. Cal. Oct. 29, 2020) (same); *Veiga v. Wells Fargo Bank, N.A.*, 2015 WL 12747659, at *3 (C.D. Cal. Mar. 6, 2015) (same); *Akins v. United States*, 2021 WL 5203294, at *8 (C.D. Cal. Nov. 9, 2021) (same).

2. Plaintiffs Lack Statutory Standing Under the UCL.

Plaintiffs do not have statutory standing under the UCL because they do not (and cannot) plausibly allege that they "suffered injury in fact and [] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854-55 (2008). To satisfy the UCL's standing requirements, "a plaintiff must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice."

*Traylor v. Wyndham Resort Dev. Corp.*, 2017 WL 5172240, at *3 (C.D. Cal. May 2, 2017) (emphasis in original and citation and quotations omitted). Plaintiffs have established neither element.

First, there is no plausible allegation that Plaintiffs lost any money or property. Plaintiffs' vague reference—unsupported by any factual allegations—to "purchase transactions completed on the Websites" by class members generally (Compl. ¶ 58)[4] does not even come close to satisfying their pleading burden under Fed. R. Civ. P. 8, requiring that they set forth plausible factual allegations that they lost money or property. Plaintiffs do not allege that *they* made any purchases on the Websites[5] or even suggest any other economic injury they suffered. *See Hall*, 158 Cal. App. 4th at 854-55 (dismissing UCL claim for lack of statutory standing where plaintiff failed to plausibly allege economic injury); *Bragg Live Food Prods., LLC. v. Nat'l Fruit Prod. Co., Inc.*, 2022 WL 3574423, at *2 (C.D. Cal. Jul. 22, 2022) (same); *Croshal v. Aurora Bank, F.S.B.*, 2014 WL 2796529, at *8 (N.D. Cal. June 19, 2014) (same); *Cavka v. SoulCycle Inc.*, 2017 WL 2906034, at *5 (C.D. Cal. Jan. 30, 2017) (same). This alone requires dismissal of the UCL claim for lack of statutory standing.

Second, Plaintiffs do not (and cannot) allege facts sufficient to show that any alleged injury occurred *as a result* of Defendants' conduct. Even if Plaintiffs made purchases on Defendants' Websites, they do not allege, nor can they allege, any causal connection between the TOU and purchases made on the Websites resulting in loss of money or property. As noted above, Plaintiffs do not even allege that they read the TOU. Regardless, it would be non-sensical for Plaintiffs to allege—had they even tried to do so—that they made purchases from Defendants' Websites as a result of the language in the TOU that they challenge. This too requires dismissal of the

[4] Although the Complaint refers to "Plaintiffs' payment of monies to Defendants" (Compl. ¶ 58), "Plaintiffs" is defined to include the three named plaintiffs and "all other persons similarly situated" in California, collectively. *Id*. p. 2.

[5] While not the subject of this Motion, Defendants have not been able to identify any purchases that were made by any of the named Plaintiffs on the Websites.

UCL claim for lack of statutory standing. *See McFarland v. JP Morgan Chase Bank*, 2014 WL 4119399, at *12 (C.D. Cal. Aug. 21, 2014) (dismissing UCL claim for lack of statutory standing where plaintiff could not establish that "but for Defendants' actions, she would not have suffered the [] harm she alleges"); *DeBons v. Globus Med., Inc.*, 2014 WL 12586433, at *3 (C.D. Cal. Jan. 31, 2014) (Wilson, J.) (dismissing UCL claim for lack of statutory standing because plaintiff "failed to show that his alleged economic injury was *the result of* any unlawful, unfair, or fraudulent practices by [the defendant]") (emphasis added); *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1188 (N.D. Cal. 2012) ("Plaintiff has not alleged that she [suffered harm] *because of* Defendant's actions") (emphasis added). Plaintiffs have not, and cannot, plausibly allege that they lost money or property as a result of the challenged language in the TOU. They thus lack statutory standing to assert their UCL claim and that claim, too, should be dismissed.

**B. Plaintiffs' Claims Fail On The Merits.**

In addition to Plaintiffs' lack of statutory standing, the Complaint is subject to dismissal for the independent reason that the claims fail on the merits.

1. <u>Plaintiffs' Yelp Law Claim Fails On The Merits Because Their Allegations Are Outside The Scope of The Statute.</u>

Plaintiffs fail to state a claim under the Yelp Law because the circumstances they allege are not within the scope of the statute. To state a claim under the Yelp Law, Plaintiffs were required to plausibly allege (at least) that their claim concerned a contract "for the sale or lease of consumer goods or services," the contract contained "a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services," and the claim does not fall within the Yelp Law's exemption, providing that the statute does not prohibit an individual or entity "that hosts online consumer reviews or comments from removing a statement that is otherwise lawful to remove." Cal. Civ. Code § 1670.8(a)(1), (e).

*Quigley v. Yelp, Inc.* is instructive. 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018). In *Quigley*, the plaintiff alleged that defendants violated the Yelp Law by banning him from their commenting platforms and suspending his account for derogatory speech made on those platforms. *Id*. at *2. The United States District Court for the Northern District of California dismissed the Yelp Law claim under Fed. R. Civ. P. 12(b)(6) for three distinct and independent reasons. First, the Court held that the Yelp Law "applies only to contracts for 'the sale or lease of consumer goods or services'" and plaintiff had not alleged that defendants sold or leased him any good or services. *Id.* (citing Cal. Civ. Code § 1670.8(a)(1)). Second, the Court held that the plaintiff had failed to identify any unlawful language in the contract because he did not identify any language prohibiting users from making disparaging statements about Defendants. *Id.* Third, the Court held that plaintiff's allegations fell within the Yelp Law's exemption for entities that lawfully remove content from their own website. *Id.* (citing Cal. Civ. Code § 1670.8(e)).

For the same reasons, the Court should dismiss Plaintiffs' Yelp Law claim here; Plaintiffs' allegations are insufficient to plead any Yelp Law violation. First, the Yelp Law does not apply to Plaintiffs' claims because the statute is limited to contracts for "the sale or lease of consumer goods or services." Cal. Civ. Code § 1670.8(a)(1). The TOU, governing Website users' "Conduct on the Site" (Stoll Decl. Ex. A at 5-7), is not a contract for the sale or lease of goods or services,[6] and there is no allegation that Plaintiffs themselves even purchased (or leased) anything from Defendants. *See Quigley*, 2018 WL 7204066, at *2-3 ("[C]ourts have held that under similar consumer protection statutes, the term 'sale or lease' does not apply to free-to-use online services.") (citing *In re Facebook Privacy Litig*., 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011)). Second, as explained in Section I.A.1. above, the TOU

[6] *Cf.* Assem. Floor Analysis, Analysis of Assem. Bill No. 2365 (2014-2014 Reg. Sess.) at 3 (specifying that Yelp Law refers to "terms and conditions of *sale*") (emphasis added).

do not contain a non-disparagement clause causing consumers to waive their free speech right to post negative reviews about the Defendants or their goods or services. Instead, the TOU lawfully preserve Defendants' right to remove offensive content from their own Websites, including content that is illegal, obscene, abusive, harassing, or racially or religiously biased. *See id.* at *2. Third, Plaintiffs' allegations fall squarely within the Yelp Law's exemption from liability for entities "that host consumer reviews or statements, and lawfully remove content from their services." *Id.* (citing Cal. Civ. Code § 1670.8(e)) (the statute "shall not be construed to prohibit or limit a person or business that hosts online consumer reviews or comments from removing a statement that is otherwise lawful to remove"). Plaintiffs have not satisfied *any* element of their Yelp Law claim and it thus must be dismissed.

2. <u>Plaintiffs' UCL Claim Fails On The Merits Because There Are No Plausible Allegations of "Unlawfulness" or "Unfairness."</u>

Plaintiffs fail to plausibly allege conduct by Defendants that is "unlawful" or "unfair," and their UCL claim should be dismissed on this basis.[7]

Plaintiffs premise their claim under the UCL's "unlawful" prong entirely on a purported underlying violation of the Yelp Law. Compl. ¶ 57. For the reasons explained in Section I.B.1. above, Plaintiffs' Yelp Law allegations fail to state a claim and, thus, cannot support a UCL claim. *See Johnson v. Ocwen Loan Servicing, LLC*, 2017 WL 10581088, at *7 (C.D. Cal. Dec. 11, 2017) (dismissing claim under UCL's "unlawful" prong where there was no plausible violation of underlying law); *Zeppeiro v. Green Tree Servicing, LLC,* 2015 WL 12660398, at *9 (C.D. Cal. Apr. 15, 2015) (same); *Croshal*, 2014 WL 2796529, at *8 (same).

Plaintiffs also allege that Defendants' conduct was "unfair" under the UCL. Compl. ¶¶ 57-58. But Plaintiffs' "conclusory" allegations are insufficient to meet their pleading burden under Rule 8 and thus cannot support the claim. *Doe v. CVS*

[7] Plaintiffs do not allege that Defendants' conduct was "fraudulent" under the UCL. *See* Compl. ¶¶ 57-58.

*Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020). Plaintiffs do not allege facts sufficient to show that the language in the TOU "is immoral, unethical, oppressive, unscrupulous or substantially injurious." *Hodsdon v. Mars, Inc.* 162 F. Supp. 3d 1016, 1027 (N.D. Cal. 2016) (citation and quotations omitted). Instead, Plaintiffs complain about the language in the TOU which *prohibits* immoral and unlawful language on the Websites, and so it is not "unfair." *Id.*; *Carter v. Bank of Am., N.A.*, 2012 WL 12887542, at *11-12 (C.D. Cal. Dec. 12, 2012) (dismissing plaintiff's "unfair" UCL claim because plaintiff "fail[ed] to plead any facts supporting an inference that defendants are liable under the unfair practices prong, beyond [] conclusory allegation[s]"); *Wright v. Ocwen Loan Servicing, LLC*, 2011 WL 13223956, at *17 (C.D. Cal. July 12, 2011) (dismissing plaintiff's UCL claim for failure "to plead facts sufficient to indicate that he states a plausible claim for relief under the unfair prong of the UCL"); *Cornejo v. JPMorgan Chase Bank*, 2011 WL 6149246, at *3, 5 (C.D. Cal. Dec. 12, 2011) (dismissing "unfair" UCL claim based on conclusory allegations that did not "raise a right to relief above the speculative level") (citation and quotations omitted). As explained above, there is nothing improper about Defendants' reservation of their right to lawfully remove offensive content from their own Websites. The UCL claim should be dismissed.

**C. Leave To Amend Would Be Futile.**

The Court should dismiss Plaintiffs' Complaint with prejudice, as leave to amend would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011). Plaintiffs cannot cure the defects in their Complaint through amendment. That is because the language from the TOU that Plaintiffs rely on, and which forms the basis for both of their claims, does not fit their theory: that their free speech rights were curtailed because they were subjected to an impermissible non-disparagement clause. Plaintiffs cannot plead around the inescapable fact that the TOU do not contain a non-disparagement clause preventing them from posting negative reviews. Consequently, their allegations are outside the scope of the Yelp

Law and there is nothing unlawful or unfair about the TOU that could support a UCL claim. Plaintiffs also cannot escape the fact that their circumstances are not covered by the interests the Yelp Law was enacted to protect and they incurred no loss of money or property as a result of the TOU, and so they lack statutory standing to assert both of their claims. Amendment cannot cure the defects in Plaintiffs' Complaint because their theory of the case is flawed from the outset. The Court should deny Plaintiffs leave to amend.

## II. IF THE COMPLAINT IS NOT DISMISSED, THE CASE SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF MISSOURI.

If Plaintiffs' Complaint is not dismissed, the Court should transfer this case to the United States District Court for the Western District of Missouri pursuant to the parties' forum selection agreement.

Here, the parties "expressly agree[d]" in the TOU that "exclusive jurisdiction for resolving any claim of dispute [] or relating in any way to [] use of these Sites resides in the state and federal courts located in Springfield, Missouri." Stoll Decl. Ex. A at 14. Thus, this case (if it survives dismissal) must be transferred to the Western District of Missouri because Plaintiffs, as the "party acting in violation of the forum-selection clause," cannot meet "the[ir] burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine,* 571 U.S. at 67; *accord Peter Marco, LLC*, 2022 WL 3098703, at *2 (forum selection clause controls and case must be transferred "in all but the most exceptional cases") (citation omitted); *Sohm v. Scholastic, Inc*., 2016 WL 11893034, at *1 (C.D. Cal. Sept. 6, 2016) (when a forum selection clause is present, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404 motion be denied") (citation omitted); *Derosa v. Thor Motor Coach, Inc.*, 2020 WL 6647734, at *3 (C.D. Cal. Sept. 30, 2020) (Wilson, J.) ("A valid forum-selection clause should be given controlling weight in all but the most exceptional cases.") (citation omitted).

Plaintiffs cannot show that public interest factors make transfer inappropriate.[8] "[A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. Instead, a court should consider only public interest factors, such as [1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; and [3] the interest in having the trial of a diversity case in a forum that is at home with the law." *Domen*, 2019 WL 4998782, at *2 (citing *Atl. Marine*, 571 U.S. at 64 and n.6) (quotations omitted). Transfer is appropriate under every one of these three factors.

Factor (1), the administrative difficulties flowing from court congestion, weighs in favor of transfer. The docket for the United States District Court for the Western District of Missouri is far less crowded than the docket for this Court. As of December 31, 2023, there are 13,547 pending cases in this Court and only 2,683 pending cases in the Western District of Missouri. Stoll Decl. Ex. B. *See Peter Marco*, 2022 WL 3098703, at *4 ("the Central District of California's crowded docket" would weigh in favor of transfer); *PennyMac Loan Servs., LLC v. Black Knight, Inc.*, 2020 WL 5985492, at *7 (C.D. Cal. Feb. 13, 2020) (holding "relative court congestion weigh[ed] in favor of transfer to Florida").

Factor (2), the local interest in having localized controversies decided at home, likewise favors transfer. California courts have no "local interest" in the rights of Defendants, whose principal places of business are in Missouri. Rather, the local interest is in having this case be adjudicated in Missouri. *See Peter Marco*, 2022 WL 3098703, at *4 (enforcing forum-selection clause, notwithstanding plaintiff's location in California, where defendants were based in the transferee state); *Kabbash*

[8] Any attempt by Plaintiffs to invalidate the forum selection clause would fail. "[F]orum selection clauses are presumptively valid" and "should be honored absent some compelling and countervailing reason." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citation and quotations omitted); *accord LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015) ("The U.S. Supreme Court has held that forum selection clauses are presumptively valid.").

*v. Jewelry Channel, Inc. USA,* 2016 WL 9132930, at *6 (C.D. Cal. Feb. 22, 2016) (same); *Heinz v. Amazon.com, Inc*., 2023 WL 4466904, at *5 (E.D. Cal. Jul. 11, 2023) (same).

As to factor (3), the interest in having the trial of a diversity case in a forum that is at home with the law, a Missouri court is perfectly "capable" of applying California law. *Indep. Fin. Grp., LLC v. Quest Trust Co.,* 2021 WL 2550397, at *6 (N.D. Cal. Jun. 22, 2021) ("The forum's familiarity with governing law is typically to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states") (citation omitted); *accord Atl. Marine,* 571 U.S. at 67 ("federal judges routinely apply the law of a State other than the State in which they sit"); *Frisby v. Thor Motor Coach, Inc.*, 2023 WL 1420434, at *5 (C.D. Cal. Jan. 24, 2023) (same); *see also Domen*, 2019 WL 4998782, at *3 ("there is no evidence that transfer of venue to a different but equally competent federal district court will prejudice Plaintiff's ability to raise [] California-based claims").

Plaintiffs can point to no "extraordinary circumstances" that would make transfer inappropriate. *Domen*, 2019 WL 4998782, at *2 (citation omitted). Instead, each of the three applicable factors weighs in favor of transfer. If this case survives dismissal, it should be transferred to the Western District of Missouri.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, or, in the alternative, transfer this case to the Western District of Missouri.

Dated: February 9, 2024

Respectfully submitted,

**GOODWIN PROCTER LLP**

By: */s/ Laura A. Stoll*

LAURA A. STOLL
*LStoll@goodwinlaw.com*
MATT KANNY
*MKanny@goodwinlaw.com*

Attorneys for Defendants

**Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Defendants BPS Direct, LLC, Cabela's LLC, Great Outdoors Group, LLC, Bass Pro Outdoor World, LLC and Cabela's Wholesale, LLC certifies that this brief contains 5,617 words, which complies with the word limit of L.R. 11-6.1.

February 9, 2024

*/s/ Laura A. Stoll*
LAURA A. STOLL

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system on **February 9, 2024**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **February 9, 2024**.

*/s/ Laura A. Stoll*
LAURA A. STOLL