**SINGLETON SCHREIBER, LLP**
CHRISTOPHER R. RODRIGUEZ, SB# 212274
E-Mail: crodriguez@singletonschreiber.com
ANDREW D. BLUTH, SB# 232387
E-Mail: abluth@singletonschreiber.com
JOHN TERNIEDEN, SB# 330343
E-Mail: jternieden@singletonschreiber.com
TRENT J. NELSON, SB# 340185
E-Mail: tnelson@singletonschreiber.com
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515

**LAW OFFICES OF THOMAS LEARY, APC**
THOMAS A. LEARY, SB# 123792
3023 First Avenue
San Diego, California 92103
Phone: (619) 291-1900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER MALDONADO, an individual; JUSTIN PURSER, an individual; and CHRISTOPHER BUTLER, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BPS DIRECT, LLC, a limited liability company; CABELA'S LLC, a limited liability company; GREAT OUTDOORS GROUP, LLC, a limited liability company; BASS PRO OUTDOOR WORLD, LLC, a limited liability company; CABELA'S WHOLESALE, LLC, a limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00098-SVW-MAR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12 (B)(6) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>[Los Angeles County Superior Court Case No. 23STCV28635]<br><br>**DATE: April 1, 2024**<br><br>**TIME: 1:30 p.m.**<br><br>**CRTRM: 10A** |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 6

II. LEGAL BACKGROUND AND PLAINTIFFS' ALLEGATIONS .......... 8

III. ARGUMENT .......... 10

A. The Applicable Legal Standard Creates a High Bar for Defendants. .......... 10

B. Plaintiffs Have Standing to Assert Claims Under Civil Code Section 1670.8 .......... 12

C. Plaintiffs Have Clearly Stated a Valid Claim for Violation of Section 1670.8 .......... 14

1. Plaintiffs have clearly alleged that Defendants' unlawful Terms of Use are a part of a "contract or proposed contract" for the sale of goods or services. .......... 14

2. Plaintiffs have validly alleged that Defendants' Terms of Use force California consumers to waive their right to make any statement regarding Defendants and their products .......... 19

D. Plaintiffs have Alleged a Valid Claim for Relief Under California Business & Professions Code section 17200. .......... 21

E. A Transfer is Unwarranted under 28 U.S.C. section 1404(a). .......... 22

F. If the Court is Inclined to Grant Defendants' Motion, Plaintiffs Should be Permitted Leave to Amend Their FAC Complaint .......... 26

IV. CONCLUSION .......... 26

# TABLE OF AUTHORITIES

## Cases

*America Online, Inc. v. Superior Court*
(2001) 90 Cal.App.4th 1 .......... 24

*Ashcroft v. Iqbal*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......... 7, 10, ,11, 15

*Atl. Marine Constr. Con. v. U.S. Dist. Court*
571 U.S. 49, 134 S.Ct. 568 (2013) .......... 24, 25

*Bell Atlantic v. Twombly*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......... 7, 10, 11, 12, 15

*Carnival Cruise Lines, Inc. v. Shute*
499 U.S. 585 (1991) .......... 23

*Carlson v. CSX Transp., Inc.*
758 F.3d 819 (7th Cir. 2014) .......... 12

*C.J. Segerstrom & Sons v. Lexington Ins. Co.*
2023 U.S. Dist. LEXIS 33293 .......... 20

*Collins v. Morgan Stanley Dean Witter*
224 F.3d 496 (5th Cir. 2000) .......... 10

*Conley v. Gibson*
355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .......... 10

*D.H. Blair & Co. v. Gottdiener*
462 F.3d 95 (2d Cir. 2006) .......... 23

*Estate of Myhra v. Royal Caribbean Cruises, Ltd.*
695 F.3d 1233 (11th Cir. 2012) .......... 23

*Gulf Oil Corp. v. Gilbert*
330 U.S. 501 (1947) .......... 25

*In re Apple Inc.*
743 F.3d 1377 (Fed.Cir.2014) .......... 22

*In Re Facebook Privacy Litigation*
791 F.Supp.2d 705 (N.D.Cal. 2011) .......... 16, 17

*In re Ryze Claims Solutions, LLC.*
968 F.3d 701 (7th Cir. 2020) .................... 25

*In re Vistaprint Ltd.*
628 F.3d 1342 (Fed.Cir.2010) .................... 25-26

*Intel Corp. v. Via Technologies, Inc.*
2001 WL 777085 (N.D.Cal. Mar. 20, 2001) .................... 12

*Keys v. Humana, Inc.*
684 F.3d 605 (6th Cir. 2012) .................... 11

*Lee v. Gen. Nutrition Cos., Inc.*
2001 WL 34032651 .................... 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
572 U.S. 118 (2014) .................... 12, 13

*Martinez v. Bloomberg LP*
740 F.3d 211 (2d Cir. 2014) .................... 23

*Nationwide Biweekly Administrative, Inc., v. Superior Court of Alameda County*
(2020) 9 Cal.5th 279 .................... 18, 19

*Nat'l Abortion Fed. v. Ctr. For Medical Progress*
2015 WL 5071977 (N.D.Cal. Aug. 27, 2015) .................... 12

*O'Brien v. Okemo Mountain, Inc.*
17 F.Supp.2d 98 (D.Conn.1998) .................... 23

*Pee Dee Health Care, P.A. v. Sanford*
509 F.3d 204 (4th Cir. 2007) .................... 24

*Peloza v. Capistrano Unified School Distr.*
37 F.3d 517 (9th Cir. 1994) .................... 11

*Plum Tree, Inc. v. Stockment*
488 F.3d 754 & n.2 (3d Cir. 1973) .................... 22

*Quigley v. Yelp, Inc.*
2018 WL 7204066 (N.D.Cal. Jan. 22, 2018) .................... 15, 16, 17

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*
768 F.3d 938 (9th Cir. 2014) .................... 11

*Ryder v. Hyles*
27 F.4th 1253 (7th Cir. 2022) ........ 26

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) ........ 11

*The Bremen v. Zapata Off-Shore Co.*
407 U.S. 1 (1972) ........ 23, 24

*Toone v. Wells Fargo Bank*
716 F.3d 516 (10th Cir. 2013) ........ 26

*Watson v. Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.*
648 F.3d 452 (6th Cir. 2011) ........ 11

**Statutes**

California Business & Professions Code section 17200 ........ 21, 22

California Civil Code § 1670.8 .. 6, 7, 8, 9, 10, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26

Fed. R. Civ. P. 8 ........ 10

Fed. R. Civ. P. 12 ........ 6, 10, 11, 15

28 U.S.C. § 1404 ........ 6, 8, 22

# I. INTRODUCTION

Defendants BPS Direct, LLC, Cabela's LLC, Great Outdoors Group, LLC, Bass Pro Outdoor World, LLC, and Cabela's Wholesale, LLC ("Defendants") filed a motion (the "Motion") to dismiss Plaintiffs' complaint with prejudice or, in the alternative, to transfer this case to the Western District of Missouri under 28 U.S.C. § 1404(a).

Defendants present three arguments in support of their claim for dismissal under Federal Rule of Civil Procedure 12(b)(6), each of which is clearly without merit. First, Defendants argue that Plaintiffs lack standing to sue as they do not fall within the "zone of interest" of California Civil Code Section 1670.8 ("Section 1670.8"). Next, Defendants assert that Plaintiffs' allegations lack merit and are outside the scope of Section 1670.8. Finally, Defendants suggest that Plaintiffs' derivative claim under the Unfair Competition Law ("UCL") fails since Plaintiffs lack standing and fail to allege any acts considered "unlawful" or "unfair." Each of these arguments is unjustified, especially at the pleading stage where the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of" Plaintiffs."

Setting aside this favorable legal standard, the allegations and judicially noticeable facts before the Court make clear that Defendants' arguments not only lack legal basis but are factually erroneous and appear to be aimed at creating confusion. Moreover, these arguments are based on unsupported assumptions and self-serving interpretations of Section 1670.8 and Defendants' own Terms of Use ("Terms"), aimed at obfuscating the actual issues in the case. Such games are unpersuasive, especially at this stage of proceedings, and the Court should deny Defendants' Motion.

**Plaintiffs Have Standing to Bring a Claim Under Section 1670.8.** Defendants intentionally mischaracterize the purpose of Section 1670.8 in an effort to evade responsibility. By selectively referencing portions of Section 1670.8's

legislative history, including the Utah couple example, Defendants aim to portray the statute as serving a restricted function. Defendants' argument that Plaintiffs lack standing ultimately hinges on impermissibly narrowing the purpose of Section 1670.8 so that Plaintiffs' claims fall outside its scope. However, Section 1670.8 unequivocally prohibits contracts **or proposed contracts** for the sale or lease of goods or services from restricting consumers' rights to express any statements regarding the seller/lessor, its employees/agents, or the goods and services. The statute's plain language and legislative history encompasses Plaintiffs' claims. Defendants' attempt to narrow the scope of Section 1670.8 is futile, improper, and in no way diminishes Plaintiffs' standing.

**Plaintiffs' Claims That Defendants' Terms Violate Section 1670.8 Satisfy the Pleading Requirements Under *Twombly* and *Iqbal*.** Defendants next argue that Plaintiffs' allegations fail to state a claim under Section 1670.8. But Plaintiffs have provided ample factual details in their complaint to plausibly (and easily) support entitlement to relief under the statute. Plaintiffs' interpretation of Defendants' unlawful Terms is plausible and aligned with the Section 1670.8's statutory language and intent. Despite Defendants' disagreement on how to interpret their Terms—which is not a valid pleading stage issue—Plaintiffs' proffered interpretation of the provisions is valid and well-supported. In fact, Defendants' only real criticism with Plaintiffs' interpretation is that Plaintiffs' allegations include ellipses and thus omit certain language. But Plaintiffs' use of ellipses is only to highlight the words in Defendants' Terms—among a laundry list of prohibited conduct—that make clear certain negative speech about Defendants and their products is restricted. No argument can be made that the words in Defendants' Terms that are recited in Plaintiffs' complaint are misquoted or otherwise do not mean what they say—Plaintiffs are restricted from posting content that insults any corporation (including Bass Pro). This crucial fact alone is sufficient to override Defendants' motion to dismiss.

**Transfer is Improper Under U.S.C. §1404(a).** Defendants alternatively seek to transfer this case to the Western District of Missouri. Defendants assume without support that the parties "expressly agreed" to a forum-selection clause in Section 16 of the Terms that grants "exclusive jurisdiction for resolving any claim or dispute [] or relating in any way to [] use of these Sites resides in the state and federal courts located in Springfield, Missouri." Defendants also argue that Plaintiffs cannot establish that public interest factors make transfer inappropriate. Even putting aside the fact that Plaintiffs have not alleged they agreed to any of the Terms at issue—including because Defendants' mere **proposal** of the offending Terms is itself unlawful—Defendants' arguments are ultimately unpersuasive and fail to address the importance of having a California court adjudicate claims, on behalf of an exclusively California class, arising from a California consumer statute intended to protect California consumers. Upon considering all factors, it is clear that transfer is improper in this unique case.

For each of the foregoing reasons below, the Defendants' Motion must be denied in its entirety.

## II. LEGAL BACKGROUND AND PLAINTIFFS' ALLEGATIONS

California Civil Code section 1670.8(a) provides, in part, as follows:

"(1) A contract or proposed contract for the sale or lease of consumer goods or services may not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services"

"(2) it shall be unlawful to threaten or seek to enforce a provision made unlawful under this section, or to otherwise penalize a consumer for making any statement protected under this section."

Section 1670.8's protections are so important that the statute expressly provides that "any waiver of the provisions of this section is contrary to public policy, and is void and unenforceable."

This statute serves to safeguard the rights of California consumers/potential consumers to speak freely and, importantly, to allow California citizens to hear such free speech about the companies that provide goods and services to California consumers—rights that companies commonly seek to abridge via clauses buried within online contracts of adhesion. As explained clearly in the legislative history of Section 1670.8, the offending clauses made unlawful by the statute "generally restrict[] individuals from making statements or taking other action that negatively impacts an organization, its reputation, products, services, management or employees." *See, Assembly Committee on Judiciary Hearing on April 22, 2014, regarding AB 2365.* Such offending, unlawful clauses are valuable to corporations only, and are designed to impede consumers' ability to voice "any statement" about a specific company, including without limitation concerns or grievances.

Plaintiffs filed a class action complaint in the Los Angeles County Superior Court on November 21, 2023. In their complaint, Plaintiffs allege that Defendants violated Civil Code § 1670.8, by requiring consumers to abide by Terms that limit the consumers' ability to make any statement about Defendants on any platform. To use and benefit from the Defendants' Websites (including Bass Pro), visitors to the Websites are informed that they must agree to Defendants' Terms. Complaint, ¶ 5. Defendants assert that "simply by accessing or using these Websites, users have read, understood, and agreed to be bound by the Terms – regardless of whether users are simply visiting the Websites or are actual purchasers or registered members of the Websites." Complaint, ¶ 5. Plaintiffs allege that they, and all others similarly situated, are asserted by Defendants to be bound by the Terms because they "visited, used, or completed sales transactions on the Websites and were subject to the Terms that limit their right as consumers to make statements regarding [Defendants] or its employees, agents, and goods or services." Complaint, ¶¶ 25(a) and 26.

The Complaint further alleges that the foregoing Terms, which plainly

violate Section 1670.8, are imposed upon consumers who visit the Websites as a "contract **or proposed contract**" to each and every consumer that visits Websites where Defendants' products and services are offered for sale. *See* Complaint, ¶¶ 5, 6, 8, 18, 19, 24, 47. Plaintiffs also allege that Defendants violate Civil Code § 1670.8 by requiring customers to agree they "shall not distribute, submit, or publish any content … that may be insulting … to any individual, partnership, or corporation." Complaint, ¶ 6. The Complaint further alleges that Defendants "reserve[] the right to immediately terminate your account without further notice in the event that, in its judgment, you violate the Terms." *Id.*

Based upon the foregoing allegations—and the relevant judicially noticeable facts and inferences that must be drawn from them in Plaintiffs' favor—there can be no doubt that Plaintiffs have sufficiently alleged a claim for relief upon which relief may be granted.

## III. <u>ARGUMENT</u>

### A. The Applicable Legal Standard Creates a High Bar for Defendants.

Generally, motions to dismiss for failure to state a claim are viewed with disfavor. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court should dismiss under FRCP 12(b)(6) only if the plaintiff has not provided fair notice of the nature of the claim and plausible factual allegations to support the claim. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although the complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a *right to relief above the speculative level* … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In short, it must allege "enough facts to state a claim to relief that is *plausible on its* face." *Bell Atlantic Corp. v. Twombly,* at 556-557, 570 (emphasis added).

In ruling on an FRCP 12(b)(6) motion, the court must determine whether the allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 664. The court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* As one court has put it, "[i]f a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.* 684 F.3d 605, 610 (6th Cir. 2012).

Additionally, courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified School Distr.* 37 F.3d 517, 521 (9th Cir. 1994) (emphasis added). When a complaint's allegations are capable of more than one inference, the court must adopt whichever plausible inference supports a valid claim. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Watson v. Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.* 648 F.3d 452, 458 (6th Cir. 2011) (defendants' conduct may have "several plausible explanations" but "[f]erreting out the most likely reason for the defendants' actions is not appropriate at the pleading stage"). "A well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly, supra,* 550 U.S. at 556; See, *Carlson v. CSX Transp., Inc.* 758 F.3d 819, 827 (7th Cir. 2014) (proper question is "*could* these things have happened, not *did* they") (emphasis in original; internal quotes omitted).

The foregoing standards for deciding a motion to dismiss under 12(b)(6)—all of which are exceedingly favorable to Plaintiffs—apply with equal force in the context of a claim based on contract interpretation. "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." *Nat'l Abortion Fed. v. Ctr. For Medical Progress*, 2015 WL 5071977 at *5-6 (N.D.Cal. Aug. 27, 2015) *citing Lee v. Gen. Nutrition Cos., Inc.*, 2001 WL 34032651, at *12 (C.D.Cal. Nov. 26, 2001) (denying motion to dismiss where defendants raised "issues of contract interpretation and other highly factual issues that are inappropriate for resolution in a motion to dismiss"); *Intel Corp. v. Via Technologies, Inc.*, 2001 WL 777085, at *6 (N.D.Cal. Mar. 20, 2001).

**B. Plaintiffs Have Standing to Assert Claims Under Civil Code Section 1670.8.**

Defendants claim that Plaintiffs lack statutory standing to assert their claims because Plaintiffs have not plausibly alleged facts to show their circumstances fall "within the zone of interests" that Section 1670.8 was enacted to address. In support of this argument, Defendants cite *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 129 (2014). However, this case ultimately undermines Defendants' position. In *Lexmark,* the Court addressed a straightforward question of statutory interpretation – whether the cause of action in §1125(a) of the Lanham Act extended to plaintiffs. The Court held that "[w]hether a plaintiff comes within 'the zone of interests' is an issue that requires [the Court]

to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127. The Court noted that all statutory causes of action extend only to plaintiffs whose interests "fall within the zone of interests protected by the law invoked and that "breadth of the zone of interests varies according to the provisions of law at issue…." *Id.* at 130. Finally, the Court noted that this test is not "especially demanding" and that the "benefit of any doubt goes to the plaintiff." *Id.* at 130. Taking all these factors into consideration, Plaintiffs in this case are clearly within the "zone of interest" that Section 1670.8 was designed to protect.

Here, Defendants suggest that, in order to have standing to sue, a plaintiff must have been impacted by a defendant's conduct in the same manner as the Utah couple referenced in the legislative history. But, despite their efforts to evade it, Defendants are bound by the plain language of Section 1670.8, which prohibits any company from **making a contract or proposing a contract** to any consumer that "waiv[es] the consumer's rights to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services." *See,* 1670.8(a). Notably, the statute imposes *civil* penalties for its violation, to be awarded to the consumer to whom the contract or proposed contract has been extended. *See,* Section 1670.8(c). Indeed, the California legislature is alone in granting California consumers a private right of action to directly enforce these speech rights against corporations like Bass Pro.

Plaintiffs have clearly alleged that they "visited, used, or completed sales transactions on the Websites" and thus, by Defendants' own assertions about the class of persons to whom their Terms apply (i.e., anyone who "accesses or uses" their Websites) are subject to the Terms that limit their right as consumers to make statements regarding [Defendants] or its employees, agents, and goods or services." Complaint, ¶¶ 5, 25(a) and 26.

For each of these reasons, the Court should easily find that Plaintiffs' have

validly alleged their standing to assert claims under Section 1670.8.

**C. Plaintiffs Have Clearly Stated a Valid Claim for Violation of Section 1670.8**

Defendants also contend that Plaintiffs' claims under Section 1670.8 lack merit because (1) Defendants' Terms is not a 'contract or proposed contract for the sale or lease of consumer goods or services', (2) Defendants' Terms does not include a non-disparagement clause, and (3) Plaintiffs' allegations fall squarely within Section 1670.8's exemption from liability allowing entities to "lawfully remove content from their services." Defendants' assertion that Plaintiffs have failed to allege any plausible facts to support a claim under Section 1670.8 is unfounded and misinterprets both the statutory language and legislative intent. Plaintiffs' complaint is meticulously crafted with factual details that firmly establish their entitlement to relief under this statute.

**1. Plaintiffs have clearly alleged that Defendants' unlawful Terms of Use are a part of a "contract or proposed contract" for the sale of goods or services.**

Defendants' argument that Plaintiffs have failed to allege the existence of a "contract or proposed contract" is based upon the contention that the Terms, governing Website users' "Conduct on the Site" is not a contract, and Plaintiffs have failed to allege that they purchased (or leased) anything from Defendants. *See* Mot., at 12:19-22. This argument is unpersuasive, based both upon the allegations of the Complaint and the judicially noticeable facts relative to the Defendants' Website(s) and its Terms.

As noted above, Plaintiffs' complaint alleges that Defendants' own Terms assert they apply to all visitors or users of Defendants' Websites. *See* Complaint, ¶¶ 1, 5, 6. Thus, to the extent that the Websites advertise products and invite consumers to complete sales transactions on the Websites, the unlawful Terms comprise a "contract or proposed contract" for the sale of goods or services

because, again, Defendants themselves dictate these Terms will apply to any use of the Websites, including the completion of sales transactions. *Id.*

Defendants argue that cases like *Quigley v. Yelp* and *In Re Facebook Privacy Litigation*— cases easily distinguished in greater detail later—warrant dismissal because the term 'sale or lease' does not apply to what Defendants contend are "free-to-use online services." Mot., 12:19-24. This assertion must be disregarded because it challenges the plain allegations of the Complaint, which are accepted as true under Rule 12(b)(6). *Ashcroft v. Iqbal, supra*, 556 U.S. 662, 678; *Bell Atlantic v. Twombly, supra*, 550 U.S. 544, 570. Even putting aside that fundamental flaw in Defendants' argument, the argument itself is factually incorrect.

For example, the basspro.com website, with just a few clicks of the mouse, offers visitors access to purchase a variety of products, including Bass Pro branded products. *See* RJN, Ex. A. Specifically, in order to purchase products on the website (e.g., a Bass Pro Shops Bigfoot Sticker), a California consumer must only do the following: (1) enter basspro.com into the browser, (2) confirm the visitor or customer is over the age of 18, (3) click on the Homes & Gifts tab, (4) click on the Novelties tab, and (5) select any one of the several Bass Pro branded products that are advertised on that page. If a user or visitor wishes to purchase, for instance, the Bass Pro Shops Bigfoot Sticker, they only need to (6) click the product to purchase (add to cart, click checkout, etc.), and (7) enter payment and shipping information to complete the purchase. RJN, Ex. A.

It is important to emphasize that Defendants' Terms applies to every step of the transaction identified above, per their specific Terms, since "[their Terms] apply to *all* websites… including basspro.com" and the transaction described above can be completed on the specific Website that Defendants make subject to these Terms. Further, Defendants' Terms states that "by accessing or using these Sites you are deemed to have read, [understood] and **agree to be bound by these Terms of use…,**" which includes the illegal provision at issue.

These judicially-noticeable facts—which are unnecessary to a proper resolution of this Motion given the applicable legal standards that require the Court to accept Plaintiffs' allegations as true—nonetheless disprove Defendants' arguments. Defendants dictate to every consumer that visits its website that the Terms apply to all websites operated by BPS Direct, L.L.C. —including shopping and ultimately purchases.

Defendants' reliance on *Quigley* and *In Re Facebook Litigation* to support their argument is misplaced. In *Quigley v. Yelp, Inc.,* 2018 WL 7204066 (N.D.Cal. Jan. 22, 2018), the court considered an obviously disorganized complaint that asserted a number of disparate claims against several different companies that had banned Quigley from their public forums for his conduct on those platforms. The *Quigley* court contains only a couple of sentences summarily dismissing Quigley's claim under Section 1670.8. The *Quigley* court starts by setting forth an incomplete description of the scope of application of Section 1670.8: "the law applies only to contract for 'the sale or lease of consumer goods or services.'" *Quigley*, at *2. However, by its own Terms, of course, Section 1670.8 applies not only to "contracts" but also to "proposed contracts" for the sale or lease of goods or services. Cal. Civ. Code § 1670.8(a)(1). The court then notes, without any analysis of the allegations of the complaint or the nature of the defendants' respective online platforms, that "Quigley has not alleged Media Matters or Yelp sold or leased him a good or service (both are free services)." *Id.*

*In Re Facebook Privacy Litigation*, 791 F.Supp.2d 705 (N.D.Cal. 2011) is similarly inapplicable and irrelevant. In *Facebook*, the court analyzed a claim under the Consumer Legal Remedies Act ("CLRA"), which the court noted applies to "an individual who purchases or leases any goods or services for personal, family or household purposes." The court further noted the plaintiff's admission that Facebook "allows anyone to register for its services free of charge." *Facebook*, 791 F.Supp.2d at 717. It thus concluded that the plaintiff had not alleged that his

Facebook account constituted a purchase of goods or services for purposes of the CLRA, dismissing the plaintiff's argument that the submission of personal information counted as a "form of payment." *Id.* This analysis very clearly has no application to the instant Motion.

To the extent there is any useful analysis at all in *Quigley* or *Facebook*, it supports the validity of Plaintiffs' claims here because here, unlike the plaintiff in *Quigley*, Plaintiffs have alleged that Defendants' websites offer products for sale to California consumers and, in connection with the purchase or potential purchase of those products, Defendants impose what they contend to be a valid, binding contract that prohibits consumers from making any statement about Defendants or their products and services. Complaint, ¶ 6.

Defendants also suggest that Section 1670.8 was not intended to apply to websites that purportedly are "free" to browse, like basspro.com, even where consumer products are offered for sale on those sites. *See* Mot., at 12:19-24 (asserting that the term "sale or lease" does not apply to free-to-use online services"). This argument is contrary to not only the plain language of the statute itself, but also the legislative history, which makes clear Section 1670.8 was intended to apply to online consumer websites. The Synopsis of the proposed legislation states the following:

> As noted by the author, online transactions are increasingly ubiquitous in today's commerce. In the online world consumers have naturally become accustomed to ignoring the mass of boilerplate text that is typically contained in the "Terms and Conditions of Service" of online adhesion contracts, reasonably skipping ahead to the "checkbox" at the end of the often ten thousand word online document, otherwise known as "click-wrap" or "click through" agreements. What consumers understandably do not realize is that they are typically agreeing to terms that may be manifestly unfair – and in these cases, potentially muzzling of cherished constitutional values such as Free Speech. Yet California and federal law do not yet make clear that such so-called non-disparagement clauses in these consumer contracts are void and unenforceable. This measure fills that consumer-protection gap. In support of the measure, the City of Attorney of Los Angeles, Public Citizen and the Consumer Federation of California write that these clauses, though potentially appropriate in other contexts, have no place in today's online consumer transactions for goods and services, and the measure appropriately makes them

> void and unenforceable absent proof of a knowing, voluntary, and intelligent waiver. TechNet also supports the measure, noting the measure appropriately balances a consumer's right to free speech while protecting legitimate contractual needs of businesses. There is no known opposition to the bill.

RJN, Ex. D (Assembly Committee Hearing, April 22, 2014, regarding AB 2365, Synopsis. (emphasis added)).[1]

Finally, Defendants suggest that Plaintiffs' claim under Section 1670.8 also fails because there are no specific allegations that plaintiffs posted any negative reviews, had their accounts terminated (or threatened to be terminated), had accounts with Defendant, read the Terms, or were dissuaded from posting negative reviews due to the Terms. Mot. At 9:1-8. There is no requirement to plead the facts that Defendants suggest. Section 1670.8(c) provides **civil penalties** for violations of the statute, allowing for enforcement by consumers, the Attorney General, or designated local authorities. The statute emphasizes that these penalties serve a preventive role, aiming to secure compliance with consumer protection laws rather than focusing on compensatory damages. The California Supreme Court's decision in *Nationwide Biweekly Administrative, Inc., v. Superior Court of Alameda County* (2020) 9 Cal.5th 279, Cal.Rptr.3d 713, is instructive. This case underscores that civil penalties under statutes akin to Section 1670.8 are oriented toward promoting public policy objectives and securing obedience to California consumer statutes. The Court held that "the civil penalties that may be awarded under the UCL and FAL, unlike the classic legal remedy of damages, are noncompensatory in nature; they require *no* showing of actual harm to consumers and are not based on the amount of losses incurred by the targets of unfair practices or misleading

---

[1] Furthermore, in addition to the plain language of the statute and its legislative history, several industry-focused publications warned retailers about the enactment of the statute and its intended application. *See RJN, Ex.* C. Defendants made a conscious decision to disregard the statute and the legal bulletins warning of its pending enactment and application. Even today, Defendants refuse to amend its Terms and Conditions to remove the provisions that plainly violate Section 1670.8.

advertising." *Id.* at 60. The Court further notes that "although civil penalties under the UCL and FAL 'may have a punitive deterrent aspect, their primary purpose is to secure obedience to statutes and regulations imposed to assure important public policy objectives … The focus of [both] statutory scheme[s] is *preventative.'" Id.* Consequently, Section 1670.8 operates as a civil statute with a preventive purpose and enforcement mechanisms that do not necessitate the inclusion of the specific facts Defendants suggest. Indeed, simply by unilaterally imposing the proposed or actual contract at issue here that contains the unlawful speech restriction Defendants violate the statute and are subject to its penalties.

For each of these reasons, Defendants' arguments that Plaintiffs have failed to allege the existence of a "contract or proposed contract" are without merit.

**2. Plaintiffs have validly alleged that Defendants' Terms of Use force California consumers to waive their right to make any statement regarding Defendants and their products.**

Defendants contend that their Terms do not violate Section 1670.8 because there is no non-disparagement clause infringing upon customers' freedom of speech or penalizing them for negative reviews. Mot. at 13:1-2. Defendants suggest that the Terms aligns with Section 1670.8 by prohibiting users from posting illegal or otherwise improper content on their websites. However, Defendants' interpretation of the statute is flawed. The Terms indeed include a provision that waives the consumer's right to make *any statement* regarding the seller or lessor or its employees or agents, or concerning the goods or services." *See,* C.C.P. §1670.8(a)(1) (*emphasis added*).

Plaintiffs' complaint contains numerous allegations describing how Defendants' Terms restrict the rights of consumers that use the Websites to make statements about Defendants and their products. *See*, e.g., Complaint, ¶¶ 5-8, 18-20. Among other things, the Complaint cites certain provisions from the Terms, including the following prohibition: "[b]y accessing the Site … [y]ou agree and

warrant that you **shall not distribute, submit or publish any content that is**, or may reasonably considered to be … **insulting**…**to any individual, partnership or corporation**." Complaint, ¶ 6, 19 (emphasis added).

Defendants further argue that their Terms align with the provisions of Section 1670.8, allowing them the legal right to remove inappropriate content posted by users on their Websites. While Plaintiffs acknowledge the right of Defendants under Section 1670.8(e) to remove a statement that is otherwise **lawful** to remove, the issue in question is not whether Defendants can remove it, **but whether Plaintiffs can say it in the first place**. Again, Defendants cannot avoid the force of what the plain words of the Terms actually say—consumers "shall not distribute, submit, or publish any content … that may be insulting … to any individual, partnership, or corporation." Complaint, ¶ 6. According to the plain language of Defendants' Terms, these consumer statements are prohibited and expressly constitute "a violation" of the Terms. *C.J. Segerstrom & Sons v. Lexington Ins. Co.*, 2023 U.S. Dist. LEXIS 33293, *11-15 (contract interpretation begins with plain meaning; denying motion to dismiss where Plaintiff offered plausible interpretation of contract).

Recognizing the weakness of its argument about the plain meaning of its restriction on consumer speech, Defendants argue that even if Section 1670.8 applies to the offending language that has been alleged, Plaintiffs' complaint lacks specific allegations that are necessary to state a plausible claim for relief. For example, Defendants assert that Plaintiffs' have not alleged any facts suggesting Defendant enforced or threatened to enforce its unlawful restriction on consumer speech. Mot., at 9:1-14. This argument is without merit and, in any event, is irrelevant.

Section 1670.8(a)(1) expressly makes it "unlawful" to include a provision in any contract or proposed contract that restricts consumer speech. *See* Cal. Civ. Code § 1670.8(a)(2) ("[i]t shall be unlawful to threaten or to seek to enforce **a**

**provision made unlawful under this section**") (emphasis added)). As discussed in detail in the preceding sections, Plaintiffs have alleged a valid claim for violation of Section 1670.8 because Defendants' Terms are part of a "contract or proposed contract" for the sale of goods or services and they include unlawful provisions that restrict the rights of consumers to make statements about Defendants. The fact that subsection (a)(2) of the statute also makes it "unlawful" for Defendants to threaten enforcement of the unlawful Terms does not mean that, in order to violate the statute, Defendants must have violated both subsection (a)(1) and (a)(2).

Plaintiffs have clearly alleged that Defendants Terms violate both sections (a)(1) and (a)(2). As Plaintiffs allege in the Complaint, not only do the Terms contain a prohibited restriction on consumer speech, but also a threat that Defendants will penalize consumers that violate the unlawful restriction by terminating that consumer's permission to use Defendants' online platforms.

### D. Plaintiffs have Alleged a Valid Claim for Relief Under California Business & Professions Code section 17200.

Defendants also argue Plaintiffs lack standing under California's UCL because they do not plausibly allege that they suffered injury in fact and lost money or property because of unfair competition. Mot., at 8:22-24. In addition, Defendants argue that Plaintiffs fail to plausibly allege conduct by Defendants that is "unlawful" or "unfair," and thus their UCL claim should be dismissed. Mot., at 13:14-15. For all the reasons set forth above regarding the validity of Plaintiffs' claim for violation of Section 1670.8, the Defendants arguments in support of their motion to dismiss Plaintiffs' UCL claim also fails.

Plaintiffs' complaint alleges its UCL claim on behalf of themselves and all other similarly situated consumers within the Subclass. Complaint, ¶ 56. Plaintiffs allege that by engaging in the "[conduct identified in Plaintiffs' complaint], Defendants, and each of them, acted in a manner that is unlawful and unfair – including by virtue of the fact that their conduct violates California Civil Code

section 1670.8—and have thus engaged in unfair and unlawful business practices to the extreme detriment of Plaintiffs … which conduct is prohibited under California Business & Professions Code sections 17200, et seq." Complaint, ¶ 57. Next, Plaintiffs allege that Defendants' unlawful and unfair conduct – e.g., the violation of Section 1670.8, which is illegal—allowed Defendants to enrich themselves at the expensive of Plaintiffs, including through Plaintiffs' payment of monies to Defendants, including through purchase transactions completed on the Websites. Complaint, ¶ 58. Finally, Plaintiffs allege they are entitled to restitutionary and injunctive relief, including disgorgement of unlawful gains Defendants obtained from their unlawful and unfair conduct at the expense of Plaintiffs. Complaint, ¶ 59

These allegations, taken in context with the other allegations in Plaintiffs' complaint, are sufficient to state a valid claim under California Business & Professions Code sections 17200, et seq. Finally, Plaintiffs' UCL claim would also stand as Plaintiffs have also pled a valid entitlement to public injunctive relief.

**E. A Transfer is Unwarranted under 28 U.S.C. section 1404(a).**

Finally, Defendants' request to transfer this case to the United States District Court for the Western District of Missouri, based on the forum-selection clause buried in Section 16 of the Terms, is without merit.

First, Defendants fail to provide any evidence that any Plaintiff actually agreed to the self-serving forum selection clause they seek to enforce. Instead, citing only to the Terms themselves, Defendants contend that the parties "expressly agreed" to a forum-selection clause. This contention is unsupported again, because there is no evidence that Plaintiffs agreed to the Terms. *See, Plum Tree, Inc. v. Stockment,* 488 F.3d 754, 756-57 & n.2 (3d Cir. 1973) (finding no evidence to support transfer); *see, e.g., In re Apple Inc.,* 743 F.3d 1377, 1378-79 (Fed.Cir.2014). For this reason alone, Defendants' motion to transfer should be denied.

Defendants' failure to submit evidence of any agreement to a particular

forum also constitutes a failure to establish that the forum-selection clause was actually communicated to the contracting consumer. To determine whether a forum-selection clause is enforceable, the court will consider, among other factors, whether the clause was reasonably communicated to the plaintiff. *See, Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590 (1991); *Martinez v. Bloomberg LP,* 740 F.3d 211, 217 (2d Cir. 2014); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). To determine whether a forum-selection clause is reasonably communicated, the court will consider the clause's physical characteristics and whether the party had the ability to become meaningfully informed of the clause and to reject its terms. *Estate of Myhra v. Royal Caribbean Cruises, Ltd.,* 695 F.3d 1233, 1244 (11th Cir. 2012).

In *O'Brien v. Okemo Mountain, Inc.* 17 F.Supp.2d 98, 103 (D.Conn.1998) the court held that a forum-selection clause was not reasonably communicated when it was located on the back of a ticket near the bottom in small typeface and there was no instruction to read the back. Here, even assuming that Defendants could establish Plaintiffs actually entered into the Terms, the forum-selection clause was not "reasonably communicated" to Plaintiffs. First, in order to access the Terms, any visitor or user of the Website must click a link to those Terms. Even when that link is clicked, the forum selection provision is buried nearly 15 pages into the Terms. The clause does not draw any attention, even to users or visitors who actually read the Terms—the language is not highlighted, bold, or italicized and the forum selection clause is the same font as the rest of the Terms. Thus, it cannot be said that the forum-selection clause in Defendants' Terms was reasonably communicated to Plaintiffs.

Additionally, Defendants' forum-selection is unreasonable since it is unfair and contrary to public policy. A forum-selection clause may be unreasonable, and thus must be disregarded, if transfer to the forum would be fundamentally unfair and deprive the plaintiff of a remedy. *See, The Bremen v. Zapata Off-Shore Co.,*

407 U.S. 1, 18 (1972). In addition, a forum-selection clause may be unreasonable and thus disregarded if transfer to the forum would contravene a strong public policy. *See, The Bremen,* 407 U.S. at 15; *Pee Dee Health Care, P.A. v. Sanford,* 509 F.3d 204, 213-14 (4th Cir. 2007). Finally, California courts will refuse to defer to the selected forum (Missouri) if to do so would substantially dimmish the rights of California residents in a way that violates [California] public policy. *See, America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 12.

Here, enforcement of Defendants' forum-selection clause would violate strong California public policy and be fundamentally unfair. Section 1670.8 is a California statute that is intended to solely protect California consumers. Like the CLRA—a California consumer statute—analyzed in *America Online, Inc.,* Section 1670.8 was enacted to protect California consumers and further a strong policy of the state. California declared such a public policy by including the following in the statute's legislative history: "Specifically, **this bill**: … 3) Provides that a provision in violation of this bill is deemed unconscionable and against public policy, and that the party that drafted the waiver provision has the burden of proving that the waiver was knowing, voluntary, and intelligent." *See, Assembly Committee on Judiciary Hearing on April 22, 2014, regarding AB 2365.* Thus, Section 1670.8 is meant to be enforced and interpreted in the state of California, and transferring this case to Missouri would be improper. This is especially so where, as here, the statute that is unique to California (Section 1670.8) has not been subject the extensive application or interpretation by the courts, making it even more important that appellate review also be conducted by the California courts.

Even if the Court is convinced that the forum-selection clause in Defendants' Terms is valid and enforceable, there are exceptional circumstances involving public-interest factors that warrant denying any transfer to Missouri. Courts have identified three public-interest facts that should be considered in a motion to transfer: (1) administrative difficulties caused by docket congestion, (2) local

interest in the controversy and the burden of jury duty, and (3) the proposed forum's familiarity with the governing law. *Atl. Marine Constr. Co. v. U.S. Dist. Court for Western Dist. Of Tex.,* 571 U.S. 49, 64 (2013). Transfer is inappropriate under all three of these factors.

Under the first factor, judicial economy alone is sufficient to deny a transfer of venue. For example, in *In re Ryze Claims Solutions, LLC.,* 968 F.3d 701, 710 (7th Cir. 2020) the court held that to the extent that docket congestion is at issue, the focus is not whether transfer will reduce congestion but whether trial may be concluded speedier and more efficiently in another court. Here, transferring the matter to Missouri—to a court completely unfamiliar and ill-equipped to adjudicate claims under California Civil Code section 1670.8, and forcing Plaintiffs and the parties' California counsel to litigate the matter thousands of miles away from home—would in no way serve judicial efficiency.

Under the second factor, there is more of a significant local interest in adjudicating the controversy in the plaintiff's chosen forum than in defendants proposed forum. *Cf. Gulf Oil,* 330 U.S. at 409. Further, the burden of jury duty is no more unfair in the plaintiff's chosen forum than in the defendant's proposed forum. As discussed above, there is a significant local interest and prevailing California policies that mandate adjudicating this controversy in California rather than Missouri. This case involves claims for relief under two specific California consumer statutes that the California Legislature deemed crucial to protect California consumers. All Plaintiffs and class members are Californians. Transferring this case to Missouri would directly contravene those protections and public policy.

Finally, under the third factor, this Court—unlike an unspecified tribunal in Missouri—is quite familiar with the law governing these types of cases. *See In re Ryze Claims Solutions, LLC,* 968 F.3d at 708 & n.16; *see e.g., In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed.Cir.2010) (transfer was properly denied when the court

(1) was already familiar with asserted patent and related technology from earlier litigation and (2) had on its docket pending litigation involving the same patent and related technology). Here, this Court has other cases on its docket that address claims for relief under Section 1670.8. The Court is intimately familiar with the law, procedural issues, and substantive motions surrounding this statute.

**F. If the Court is Inclined to Grant Defendants' Motion, Plaintiffs Should be Permitted Leave to Amend Their FAC Complaint.**

Plaintiffs believe that, for all the reasons stated above, Defendants' motion should be denied. However, to the extent that the Court decides to grant Defendants' Motion in any regard, then Plaintiffs respectfully request this Court grant them leave to amend their Complaint. Leave to amend should ordinarily be granted before dismissal with prejudice unless the amendment would be futile. *Ryder v. Hyles,* 27 F.4th 1253, 1258 (7th Cir. 2022); *Toone v. Wells Fargo Bank*, 716 F.3d 516, 524 (10th Cir. 2013).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss.

Dated: March 4, 2024 SINGLETON SCHREIBER, LLP

By: */s/ Christopher R. Rodriguez*
Christopher R. Rodriguez
Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,799 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 4, 2024

*/s/ Christopher R. Rodriguez*
Christopher R. Rodriguez

## CERTIFICATE OF SERVICE

I, Christopher R. Rodriguez, hereby certify that on March 4, 2024, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Christopher R. Rodriguez*
Christopher R. Rodriguez